UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ASHLEY N. HELLUMS, <br><br> Plaintiff, <br><br> v. <br><br> EXETER FINANCE, LLC, <br><br> Defendant. | CIVIL COMPLAINT <br><br> CASE NO. 3:21-cv-00012 <br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW comes ASHLEY N. HELLUMS ("Plaintiff"), by and through the undersigned, complaining as to the conduct of EXETER FINANCE, LLC ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.*, as well as for Intentional Infliction of Emotional Distress ("IIED"), Invasion of Privacy ("IOP"), and Trespass to Chattels ("TTC") for Defendant's unlawful and tortious conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Indiana and a substantial portion the events or omissions giving rise to the claims occurred within the Northern District of Indiana.

## PARTIES

4. Plaintiff is a consumer over 18 years-of-age residing in Michigan City, Indiana, which is located within the Northern District of Indiana.

5. Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6. Defendant is an automobile financing company that regularly provides financing to consumers. Defendant is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 2101 West John Carpenter Freeway, Irving, Texas.

7. Defendant is a "person" as defined by 47 U.S.C. §153(39).

8. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

9. The instant action arises out of Defendant's incessant attempts to collect upon past due car payments ("subject debt") said to be owed by Plaintiff.

10. In 2019, Plaintiff financed the purchase of a 2019 Jeep Renegade ("subject automobile") through Defendant.

11. Plaintiff remained current on her payments to Defendant for months, until the COVID-19 pandemic hit, causing Plaintiff to experience financial distress and fall behind on her payments to Defendant.

12. In approximately July 2020, Plaintiff began receiving calls to her cellular phone, (219) XXX-6397, from Defendant, seeking to collect upon the subject debt.

13. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in -6397. Plaintiff is and has always been financially responsible for the cellular phone and its services.

14. Defendant mainly uses the phone number (800) 321-9637 when placing phone calls to Plaintiff's cellular phone, although upon belief Defendant has used other numbers as well.

15. Upon information and belief, the above-referenced phone number ending in -9637 is regularly utilized by Defendant during its debt collection activity.

16. During answered calls, Plaintiff experiences a noticeable pause, lasting several seconds in length, before she is connected to a live representative.

17. On other unanswered calls, Plaintiff has been left voicemail messages, including prerecorded messages.

18. Upon speaking with one of Defendant's representatives, Plaintiff was informed that Defendant was attempting to collect upon the subject debt.

19. Feeling annoyed by Defendant's persistent contacts and considering her inability to address the subject debt, Plaintiff demanded that Defendant stop calling her cellular phone as she lacked the financial means to address the subject debt.

20. Despite Plaintiff's demands, Defendant has continued to regularly call her cellular phone seeking collection of the subject debt up through the filing of this lawsuit.

21. Defendant frequently places upwards of 5 phone calls per day to Plaintiff's cellular phone, notwithstanding her repeated demands that Defendant stop contacting her cellular phone.

22. Plaintiff has received dozens of calls from Defendant since she first demanded that it stop calling.

23. In addition to the harassing phone calls to Plaintiff, Defendant similarly began bombarding Plaintiff's parents' cellular phones with phone calls after Plaintiff demanded the phone calls stop, despite her parents having no connection nor association to the subject debt or the subject automobile.

24. Plaintiff's parents' cellular phone numbers are (219) XXX-5517 and (219) XXX-9280.

25. Upon information and belief, Defendant chose to begin contacting Plaintiff's family members in a harassing attempt to compel her parents to pressure Plaintiff into addressing the subject debt.

26. Plaintiff's parents complained to Plaintiff about the harassing nature of Defendant's phone calls, prompting Plaintiff to demand that Defendant cease contacting Plaintiff's parents.

27. Notwithstanding Plaintiff's demands that the calls to her parents cease, Defendant continued placing collection phone calls to her parents' cellular phones up until the filing of the instant matter.

28. Defendant has not simply placed a few innocent and mistaken phone calls. Instead, it has commenced a calling campaign of the most harassing and outrageous degree.

## DAMAGES

29. Plaintiff has suffered and continues to suffer emotional distress and mental anguish as a direct result of the unlawful collection practices of Defendant.

30. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

31. Plaintiff has been unduly inconvenienced and harassed by Defendant's excessive attempts to collect upon a debt after Plaintiff explicitly demanded that it cease contacting her and her parents – requests which Defendant saw fit to ignore.

32. Defendant's phone harassment campaign caused Plaintiff actual harm, including but not limited to: invasion of privacy, aggravation that accompanies unsolicited telephone calls, severe emotional distress, embarrassment that her personal information was shared with third parties, strained relationship with her family members as a result of Defendant's harassment, and numerous violations of her state and federally protected interests to be free from harassing and invasive debt collection conduct.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

33.  Plaintiff repeats and realleges paragraphs 1 through 32 as though fully set forth herein.

34.  The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") *or* using prerecorded or artificial voice messages, without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

35.  Defendant used an ATDS in connection with its communications directed towards Plaintiff's cellular phone. The significant pause, lasting several seconds in length, which Plaintiff experiences during answered calls, is instructive that an ATDS is being utilized to generate the phone calls. Additionally, Defendant continuing to contact Plaintiff and Plaintiff's parents after she demanded that such phone calls stop further demonstrates Defendant's use of an ATDS. Moreover, the nature and frequency of Defendant's contacts points to the involvement of an ATDS.

36. Furthermore, the fact that Defendant's dialing system was used to contact individuals with absolutely no connection to the subject – i.e., Plaintiff's parents – demonstrates the extent to which Defendant's dialing system has the capacity to randomly or sequentially generate numbers to be dialed, rather than targeting the true intended subject of its collection efforts.

37. Even further, the prerecorded and/or artificial voice messages Plaintiff experienced from Defendant similarly bring Defendant's phone calls within the ambit of the TCPA.

38. Defendant violated the TCPA by placing dozens of phone calls to Plaintiff's cellular phone using an ATDS and/or prerecorded messages without her consent. Any consent that Plaintiff *may* have given in connection with incurring the subject debt was specifically revoked by Plaintiff's demands that Defendant cease contacting her.

39. The calls placed by Defendant to Plaintiff were regarding collection activity and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

40. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call. Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C). Here, Plaintiff explicitly notified Defendant to stop contacting her. Despite possessing knowledge of Plaintiff's wishes, Defendant consciously defied the same and willfully placed a barrage of phone calls to Plaintiff's cellular phone, in an attempt to harass Plaintiff into submission.

WHEREFORE, Plaintiff, ASHLEY N. HELLUMS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Entitling Plaintiff to injunctive relief;

d. Awarding Plaintiff costs and reasonable attorney fees; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Under Indiana law, intentional infliction of emotional distress occurs when a defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. *Cullison v. Medley,* 570 N.E. 2d 27, 31 (Ind. 1991).

42. "It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Id.*

43. Defendant intentionally engaged in extreme and outrageous conduct when Defendant incessantly tried to dragoon Plaintiff into making payments on the subject debt via the harassment carried out through the phone calls to her and her parents discussed above. Defendant's placement of the voluminous phone calls, including upwards of 5 phone calls on a daily basis, underscores the extreme and outrageous nature of Defendant's conduct. Defendant's conduct was not in a reasonable or legitimate attempt to collect a debt from a consumer. Instead, Defendant outrageously tried to break Plaintiff and Plaintiff's parents' collective will through the persistent and repeated phone call campaign. The fact Defendant's engaged in this conduct against Plaintiff during a worldwide pandemic only furthers the outrageous nature of its conduct.

44. Defendant intended to cause Plaintiff emotional distress, as it knew its conduct in contacting Plaintiff and her family members was harassing to Plaintiff and her family members, yet consciously chose to continue pursuing such course of conduct. As discussed above, such conduct proximately caused Plaintiff's severe emotional distress.

WHEREFORE, Plaintiff, ASHLEY N. HELLUMS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and constitute intentional infliction of emotional distress under Indiana law;

b. Awarding Plaintiff actual damages in connection with Defendant's extreme conduct;

c. Awarding Plaintiff punitive damages as a result of Defendant's extreme conduct; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III-INVASION OF PRIVACY-INTRUSION UPON SECLUSION

45. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Claims of IOP-intrusion upon seclusion involve "[o]ne who intentionally intrudes physically or otherwise, upon the solitude or seclusion of another or his private affair or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Restatement (Second) of Torts* § 652B (1977).

47. Defendant, through its barrage of phone calls to Plaintiff and her parents, has repeatedly and intentionally invaded Plaintiff's privacy.

48. Defendant's persistent and unwanted autodialed phone calls to Plaintiff's cellular phone and her parents' phones eliminated Plaintiff's right to privacy.

49. Moreover, Defendant's behavior in continuously contacting Plaintiff by phone at different times throughout the day, was highly intrusive and invasive.

50. Defendant's unsolicited phone harassment campaign severely disrupted Plaintiff's privacy, disrupted Plaintiff's overall focus, and continually frustrated and annoyed Plaintiff to the point where Plaintiff was denied the ability to quietly enjoy her life, instead having it upended by Defendant's harassing phone call campaign.

51. These persistent collection calls eliminated the peace and solitude that Plaintiff would have otherwise had in Plaintiff's home and/or any other location in which Plaintiff would have normally brought her cellular phone.

52. By continuing to call Plaintiff and her family members in an attempt to dragoon Plaintiff into payment, Plaintiff had no reasonable escape from these incessant calls.

53. As detailed above, by persistently contacting Plaintiff's cellular phone, as well as her parents, despite Plaintiff repeatedly informing Defendant of the harassing nature of such conduct, Defendant invaded Plaintiff's right to privacy and caused Plaintiff to suffer concrete and particularized harm.

54. Defendant's relentless collection efforts would be deemed highly offensive to a reasonable person.

55. Defendant intentionally and willfully intruded upon Plaintiff's solitude and seclusion by placing over 100 unconsented phone calls to Plaintiff's cellular phone in a short period of time.

WHEREFORE, Plaintiff, ASHLEY N. HELLUMS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
b. Awarding Plaintiff actual damages;
c. Award Plaintiff punitive damages;
d. Award Plaintiff reasonable attorney's fees and costs;
e. Enjoining Defendant from contacting Plaintiff; and
f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT IV-TRESPASS TO CHATTELS

56. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

57. Trespass to Chattels is defined as the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification. Prosser, Torts, 64 (2d ed.).

58. "The harm recognized by the ancient common law claim of trespass to chattels — the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation." *Mey v. Got Warranty, Inc.,* 193 F.Supp.3d 641, 647 (N.D. W. Va. 2016).

59. Courts have applied this tort theory to unwanted telephone calls and text messages. *See Czech v. Wall St. on Demand,* 674 F.Supp.2d 1102, 1122 (D.Minn. 2009) and *Amos Financial, L.L.C. v. H&B&T Corp.,* 48 Misc.3d 1205(A), 2015 WL 3953325, at *8 (N.Y.Sup. Ct. June 29, 2015).

60. "Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as "plac[ing a] foot on another's property" is trespass." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring).

61. Defendant interfered with Plaintiff's ability to use her cellular phone while it was in her possession.

62. Defendant barraged Plaintiff with voluminous calls over a short period of time, leaving her unable to use or possess her cellular phone in the manner in which she wanted to during such time.

63. Defendant knew or should have known that its phone calls were not consented to, as Plaintiff repeatedly stated that Defendant must cease contacting her.

64. Defendant caused damage to Plaintiff's cellular phone, including, but not limited to, the wear and tear caused to her cellular phone, the loss of battery charge, and the loss of battery life.

65. Plaintiff also suffered damages in the form of stress, anxiety, and emotional distress, from Defendant's continuous interference with her possession of her cellular phone.

WHEREFORE, Plaintiff, ASHLEY N. HELLUMS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Enter judgment in favor of Plaintiff and against Defendant;

b. Award Plaintiff actual damages in an amount to be determined at trial;

c. Award Plaintiff punitive damages in an amount to be determined at trial;

d. Enjoining Defendant from contacting Plaintiff;

e. Award any other relief this Honorable Court deems equitable and just.

Dated: January 8, 2021                                   Respectfully Submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Northern District of Indiana
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com